SO ORDERED.

SIGNED this 15th day of June, 2021.



_Dale L. Somers_
Dale L. Somers
United States Chief Bankruptcy Judge

**Designated for online use but not print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In Re:

Brandi Leanne Beach,

          Debtor.

Case No. 19-41514
Chapter 7

MegaForce, L.L.C.,

          Plaintiff,

v.

Brandi Leanne Beach,

          Defendant.

Adv. No. 20-07009

**Memorandum Opinion and Order Denying**
**Plaintiff's Complaint to Determine that Debt is Nondischargeable**

Plaintiff MegaForce, LLC ("MegaForce") objects to discharge of its claim

against Debtor Brandi Leanne Beach ("Beach") under § 523(a)(2),[1] false

pretenses, false representation, or actual fraud, and § 523(a)(6), willful and

malicious injury. The claim arose out of Beach's guarantee of an obligation for

staffing services provided by MegaForce to Damascus Edge, Inc. (hereafter

"the Company"),[2] a business run by Beach. In September 2018, after the

Company failed to make a payment owed to MegaForce under a 2017 agreed

settlement of a state court collection suit, the Company and Beach, as

guarantor, entered into an amended settlement agreement in which

MegaForce agreed to forbear from collection efforts in exchange for

$256,784.14 in periodic payments. Despite Beach's efforts to sustain the

viability of the business, the Company failed and no payments were made.

Beach filed for relief under Chapter 7. MegaForce contends its claim against

Beach is excepted from discharge because Beach fraudulently intended not to

make payments, withheld relevant financial information, failed to provide a

UCC-1 financing statement, and willfully and maliciously intended to harm

---

[1] 11 U.S.C. § 523(a)(2). Future references in the text to sections of Title 11 shall be to the section number only.

[2] The business was incorporated as Damascus Edge, Inc. in 2015. On December 19, 2017, the name was changed to Mode3, Inc. For ease of reference, the Court will refer to the business as the Company.

2

MegaForce. Trial was held on May 19, 2021.[3] The Court finds that MegaForce has failed to prove its allegations and enters judgment for Beach.

## I. Findings of Fact

MegaForce presented its case through testimony of Beach, who MegaForce used to explain exhibits evidencing the Company's business transactions, and Rob Thayer, the president and CEO of MegaForce. Beach later testified in her defense. The defense also called Nathan Stewart, a representative of Honor Technology, a business that contracted to purchase the assets of the Company in a failed attempt to work out its debts. The parties agreed that all offered exhibits were authentic and admissible. All of the witnesses were credible.

MegaForce is in the business of providing staffing for technology and construction businesses. From 2012 through 2017, Beach was employed by MegaForce as a sales executive.[4] In 2015, MegaForce and the Company, which provided technology services to businesses, entered into a Master Service Agreement. Under the agreement, MegaForce agreed to provide staffing to the Company to complete technology projects awarded to the

---

[3] Megaforce appears by Stephan L. Skepnek. Beach appears by Todd A. Luckman.

[4] For an unspecified period of time, Beach was employed by MegaForce and also associated with the Company. She left MegaForce in June 2017.

Case 20-07009    Doc# 80    Filed 06/15/21    Page 3 of 23

Company by third parties. MegaForce paid the hourly compensation for the Company's staff and billed the Company with the expectation that it would paid from the resulting receivables. From August 2015 through August 2017, MegaForce invoiced the Company approximately $3,570,000 for services.

By January 30, 2017, the Company owed MegaForce a past due balance of $227,167.17. At that time, the Company, through Beach who had become its CEO, entered into an amendment of the Master Services Agreement in which the Company agreed to use MegaForce as its exclusive provider of contract labor/staffing until December 31, 2017 and to pay the past due balance in bi-weekly installments. The payment obligation was stated in a promissory note dated January 30, 2017, for $227,167.l7, due on December 20, 2017, executed by Beach, as CEO of the Company, and individually by Beach and Jeffrey Shipley, the former CEO of the Company, as guarantors. In June 2017, Beach left MegaForce to direct sales and operations of the Company.

To finance its operations, the Company entered into a series of three merchant agreements with 1 Global Capital, LLC ("1 Global"). These were short-term, high-interest lending agreements in which a lump sum advance was made to the Company in exchange for agreeing to the lender's initiating daily draws from the Company's account, into which payments on accounts

4

receivable were deposited. For example, on March 1, 2017, the Company

entered into a merchant agreement with 1 Global under which the Company

received $90,000, in exchange for 220 daily withdrawals of $572.73, for a total

payment of $126,000. The merchant agreement obligations were secured by a

perfected security interest in the Company's accounts receivable, and the

security agreements included a negative pledge whereby the Company agreed

not to create or permit to exist any other liens on its then owned and future

accounts.

MegaForce continued to invoice the Company for services. The

Company made payments, but by July 6, 2017, the balance due was

$702,659.70. The last invoice for services to the Company was dated August

3, 2017. MegaForce ceased providing services, and the Company responded by

hiring workers on a full time basis. MegaForce sued the Company and

guarantors Beach and Shipley in state court. The litigation was resolved by a

settlement agreement dated September 1, 2017. Under the agreement,

executed by Beach as CEO, the Company agreed to pay $100,000 on

September 1, 2017 and $543,351.17 in 24 monthly payments of $24,020.49.

The agreement provided that all future communications would be through

counsel, except with respect to the periodic payments. The Company, by

Beach its CEO, granted MegaForce a security interest in accounts receivable,

5

effective upon full payment by the Company to 1 Global. In paragraph 11, the Company agreed "[u]pon reasonable request," to provide "documentation necessary to estimate" the date of such payment, and that on the date of such payment to provide MegaForce with a UCC-1 in favor of MegaForce. The CEO of MegaForce testified that he was aware that as of September 2017, the filing of a UCC-1 by MegaForce would have been a violation of the Company's agreement with 1 Global. In paragraph 12 of the settlement agreement, Beach individually guaranteed the periodic payments to be made by the Company. In her personal capacity, Beach executed the settlement agreement for "purposes of paragraph 12 only."

The Company paid the $100,000 lump sum on September 7, 2017, and from September through the end of June 2018, made ten of the periodic payments. On December 19, 2017, by filing with the office of the Kansas Secretary of State, the Company changed its name from Damascus Edge, Inc. to Mode3, Inc. On January 24, 2018, the Company entered into a new merchant agreement with 1 Global to obtain an advance of $250,000. In April, 2018, the Company obtained a merchant advance from Cornell Funding. The Company relied on the merchant funding to make payroll and stay afloat.

The Company failed to make the August 2018 monthly payment to MegaForce. By August 2018, the Company's client base was shrinking.

6

Beach continued to obtain financing in hope of saving the Company. For example, Crestmark, an accounts receivable factoring company, advanced $109,276.24 on September 19, 2018, Cast Capital advanced $100,000 on September 21, 2018, and Arcarius advanced $97,500 on September 25, 2018. The Company made a periodic payment to MegaForce on September 10, 2018 and a double payment on September 25, 2018. Proceeds of the financing from Cornell Funding were used to pay MegaForce.

On September 26, 2018, when the balance owed by the Company under the September 2017 settlement agreement was $256,784.14, MegaForce, the Company, and Beach personally entered into an amended settlement agreement. It provided for payment of the balance in 10 monthly installments of $24,020.49, the same periodic amount as was owed under the original settlement agreement, with the final payment and remaining balance due on September 1, 2019. The amended agreement obligated the Company to provide MegaForce with a fully executed UCC-1 in accord with the prior agreement, and Beach affirmed her personal guaranty of the payments due.

Review of the Company's customer balance detail shows that by September 2018 invoices for services were declining from prior levels. Later Beach learned that a former Company employee had reached an agreement to directly provide services to significant former clients of the Company. Beach

7

also learned that another employee had dishonestly claimed that he, on behalf of the Company, had developed an application that had been sold to the Company's clients, that did not perform. This also caused loss of clients.

On November 18, 2018, the Company entered into a workout process through South Wind consultants. As a result, Honor Technology Solutions agreed to purchase the Company's assets and operate the business in exchange for establishing a $200,000 escrow for the payment of the Company's major creditors, including 1 Global, Arcarius, Fast Forward, and MegaForce.[5] However, because most of the Company's major clients had already decided not to do business with the Company, accounts were not generated and the escrow was not established.

The Company failed to make payment to MegaForce in accord with the amended settlement agreement. On November 29, 2018, MegaForce filed a state court petition against the Company for breach of the settlement agreement, as amended, and against Beach to enforce her guarantee. In addition to payment default, MegaForce believed that the Company had breached paragraph 11 of the settlement agreement, which required the

---

[5] MegaForce, as an unsecured creditor, is included in the schedule of business debts attached to the Second Wind agreement. Exh. 22, p. 1. Beach testified that she intended MegaForce to receive payments from the escrow, although MegaForce was not a secured creditor listed in the recitals in the sales agreement with Honor Technology. *See* Exh. 22, p. 12.

Company to inform MegaForce when the obligation to 1 Global was satisfied and on that date to deliver an executed UCC-1 to MegaForce. MegaForce's CEO testified that numerous requests for information were made, that no response was received, and that the UCC-1 was never provided.

Beach confirmed that the obligation to 1 Global that was outstanding in September 2017 was satisfied and that a UCC-1 was not provided to MegaForce. However, she also testified that the satisfaction was by renewal of the 1 Global financing, which did not result in release of 1 Global's security interest or release of the Company's covenant not to grant other security interests in 1 Global's collateral. Beach did not understand the settlement agreement to prohibit the renewal. Beach testified that under the settlement agreement all communications were through counsel, that she kept her counsel informed about the Company's borrowing, and she did not know what communications may have been made between counsel for the two parties. She recalled at least one instance when, upon request, she provided information about the balance owed to 1 Global.

MegaForce's CEO testified that the Company wrongly failed to inform MegaForce of the change of the Company's corporate name and to advise about its ongoing borrowing from multiple lenders. He acknowledged that Beach had not made an agreement that the name would not be changed.

9

Although MegaForce also acknowledged that Beach had not agreed to stop obtaining funding or to generally turnover financial information, its CEO asserted that Beach had a duty to advise MegaForce of the multiple loan transactions in September 2018. MegaForce submits that if it had known of the true state of affairs, it would have sued immediately rather forbearing suit and then entering into the amended settlement agreement. From MegaForce's perspective, the cumulative effect of the evidence is that there was no intent to pay the debt.

Beach filed for relief under Chapter 7 on December 11, 2019. Debtor's scheduled debts include her obligation as guarantor of the Company's debt to MegaForce, 1 Global, Arcarius, and Cornell Funding. MegaForce filed a proof of claim for $256,784.14, the amount owed under the amended settlement agreement.

On May 7, 2020, MegaForce filed this adversary proceeding.

## II.  Analysis

 MegaForce objects to discharge of its claim against Beach under § 523(a)(2)(A) and (a)(6). "'Exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to

10

be resolved in the debtors favor.""[6] In a prior ruling, the Court held that MegaForce has the burden to prove both claims by a preponderance of the evidence.[7]

### A. MegaForce's claim is not excepted from discharge under § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud." A fraudulently induced forbearance qualifies as an extension or renewal of credit.[8] The September 2017 settlement agreement resulted in the dismissal of litigation against Beach (and the other defendants), and as a result of the September 2018 amended settlement agreement, MegaForce deferred filing a second law suit for about two months. Section 523(a)(2)(A) could be applicable if the required elements were satisfied.

To except such a debt from discharge under § 523(a)(2)(A), the creditor must prove five elements: (1) debtor engaged in false pretenses, made a false representation, or engaged in actual fraud; (2) the debtor had the intent to

---

[6] *Okla. Dep't of Sec. v. Wilcox*, 691 F.3d 1171, 1174 (10th Cir. 2012) (quoting *In re Sandoval*, 541 F.3d 997, 1001 (10th Cir. 2008)).

[7] Doc. 72.

[8] *See, e.g.*, *Ojeda v. Goldberg*, 599 F.3d 712, 718-19 (7th Cir. 2010).

11

deceive the creditor; (3) the creditor relied on the debtor's conduct; (4) the creditor's reliance was justifiable; and (5) the creditor was damaged as a proximate result.[9] Of these elements, the first is the foundation for the exception.

### 1. MegaForce has not proven it deferred collection because of false pretenses, a false representation, or actual fraud.

As to the first element, which requires proof of false pretenses, a false representation, or actual fraud, in the pretrial order MegaForce contends that its claim is nondischargeable pursuant to § 523(a)(2)(A) because Beach:

> had a duty to disclose information regarding the financial circumstances of her company and her own financial circumstances, including changing the name of her company, the status of payments to 1 Global Capital, UCC-1 Financing Statements, the existence of additional merchant cash lenders and payments of accounts receivable by [Beach's] company to factoring companies. . . . [Beach] made contemporaneous fraudulent representations and omissions to [MegaForce]. . . [Beach] did not seek an extension of credit for the purpose of repaying [MegaForce], but instead, to avoid a judgment in [MegaForce's] favor while [Beach] sought to liquidate the company assets and sell the company.[10]

Beach responds that the Company's obligations "were incurred under normal

---

[9] *See, e.g.*, *Wagner v. Wagner (In re Wagner),* 527 B.R. 416, 433 (10th Cir. BAP 2015); *Solis v. Asif (In re Asif)*, 455 B.R. 768, 784 (Bankr. D. Kan. 2011).

[10] Doc. 68, pp. 2-3.

business circumstances" and that she did not intend to "defraud, deceive or otherwise engage in any false pretenses."[11] She also asserts that "[a]s adverse parties in litigation," she had no duty to MegaForce "to inform it of other credit she had obtained or the changes to the business."[12] In closing argument, counsel for MegaForce confirmed that its § 523(a)(2)(A) claim is predicated upon alleged fraudulent nondisclosure and the contention that Beach had no intent to pay MegaForce.

### a. False pretenses

MegaForce's primary allegations of fraud appear intended to come within the false pretenses arm of § 523(a)(2)(A). Under this section, "[f]alse pretenses . . . are implied misrepresentations intended to create and foster a false impression. Unlike false representations, which are express misrepresentations, false pretenses include conduct and material omissions."[13] "Silence or concealment may constitute the requisite 'false pretenses,' for nondischargeability purposes, if the debtor has a duty to disclose the concealed facts."[14]

---

[11] *Id.* p. 3.

[12] *Id.*

[13] *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 223 (10th Cir BAP 2013).

[14] *In re Asif*, 455 B.R. at 787.

As to the existence of a duty to disclose, MegaForce relies on the Restatement (Second) of Torts, § 551,[15] which provides in part:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> . . .
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

The Court finds no fraudulent breach of a duty to disclose in this case. Most importantly, the focus of MegaForce's case is upon nondisclosure of information about the Company leading up to and at the time of the amended settlement agreement. But assuming the Company had a duty to disclose, failure to fulfill that duty would not provide a basis to prevail in this case where the issue is nondischargeability of MegaForce's claim against Beach, as guarantor, not the Company. There is no evidence that MegaForce requested information about Beach's ability to pay; MegaForce provides no argument as

---

[15] Restatement (Second) of Torts § 551 (1977) (adopted by the Kansas Supreme Court in *Griffith v. Byers Constr. Co. of Kan., Inc.*, 510 P.2d 198, 203, 212 Kan. 65, 71 (Kan. 1973)).

14

to why the Court should find Beach had a duty to disclose financial information. Beach individually was not bound by paragraph 11 of the September 2017 settlement agreement, which required some disclosures by the Company. There was no confidential relationship between Beach and MegaForce; they were in an adversarial relationship, with MegaForce threatening litigation. The circumstance of guarantor liability is not one where one would expect disclosure without inquiry.

Further, even if the exception to discharge could be predicated upon false pretenses about the finances of the Company, the Court would deny the claim. MegaForce relies on failure to disclose the change of name of the Company and alleged noncompliance with paragraph 11 of the September 2017 settlement. Under that portion of the settlement agreement, the Company agreed "[u]pon reasonable request," to provide "documentation necessary to estimate" the date of payment of the Company's obligation to 1 Global, and that on the date of such payment to provide MegaForce with a UCC-1 in favor of MegaForce. It is undisputed that at the time of the amended settlement agreement, when MegaForce agreed to defer litigation over the company's failure to make all of the required periodic payments, MegaForce knew that it had not been provided a UCC-1 and the Company had changed its name. Further, neither paragraph 11 nor any other provision

15

of the September 2017 settlement agreement or the amended settlement agreement purports to create a general duty to disclose information about the Company. There was no condition of trust or confidence between MegaForce and the Company. There was no custom of trade or circumstances of the transaction which would impose a duty of disclosure on the Company.

### b.    False representation

MegaForce also alleges its claim should be excepted from discharge based upon a false representation. For purposes of § 523(a)(2)(A), a false representation is an express statement.[16] MegaForce argues that Beach falsely represented her intent to pay the Company's obligation. The only evidence offered in support is her written guarantee of the Company's debt, followed by her failure to pay. This is evidence of breach of her guarantee, a breach of contract; it is not a false representation.

### c.    Actual fraud

Finally, MegaForce alleges actual fraud. The discharge exception for actual fraud applies "[w]hen a debtor engages in a scheme to deprive or cheat

---

[16] *In re Sturgeon*, 496 B.R. at 223. It has been suggested that when there is a duty to speak, concealment can constitute a misrepresentation. *Tobias v. Alvarado (In re Alvarado)*, 608 B.R. 877, 884 (Bankr. W.D. Okla. 2019). Because, as examined above, there was no duty to speak in this case, the Court does not address the question of whether silence can constitute a misrepresentation.

16

another of property or a legal right."[17] "Actual fraud consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."[18]

As to actual fraud, MegaForce argues that Beach did not intend to pay the amounts due under the settlement agreement or the amended settlement agreement. It also contends that the amended settlement agreement was not sought for the purpose of repaying MegaForce, but instead "to avoid a judgment in [MegaForce's] favor while [Beach] sought to liquidate the company assets and sell the company."[19]

As to be expected, there is no direct evidence of fraud; rather MegaForce relies upon the Company's deteriorating financial circumstances to evidence fraud. This approach suffers from the same fatal infirmity as does MegaForce's claim of false pretenses—it focuses entirely upon the Company, not Beach's financial circumstances. That evidence does not provide a basis to decide that Beach as guarantor had no intent to pay MegaForce when she

---

[17] *Vickery v. Vickery (In re Vickery)*, 488 B.R. 680, 690 (10th Cir. BAP 2012) (quoting *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001)).

[18] 4 *Collier on Bankruptcy* ¶ 523.08 (Richard Levin & Henry J. Sommer eds-in-chief, 16th ed 2021).

[19] Doc. 68, pp. 2-3.

agreed to the amended settlement agreement.

Further, if the focus were on the Company, the story of its failure exhibits Beach's struggle to both pay MegaForce and save the Company, not to defraud MegaForce. This is most clearly exhibited in the payment history. The settlement agreement is dated September 1, 2017, when the balance owed by the Company to MegaForce was $543,351.17. In accord with the agreement, on September 7, 2017, the Company paid MegaForce $100,000, and generally made monthly payments of $24,020.49 through the end of June. Thereafter, it made payments of late fees and interest, until September 10, 2018, when it paid one installment and September 25, 2018, when it made a double installment payment, funded at least in part from proceeds of the financing loan obtained in September 2018. The amended settlement agreement is dated one day later, September 26, 2018. At that time the balance was $256,784.14. Thereafter, the Company made two payments of approximately $1000 each.

After entering into the amended settlement agreement, the Company faced insurmountable hurdles. In the fall of 2018, the Company, through its sale representative, was working to obtain contracts for significant new projects from existing clients. One of the potential contracts would have been for over $500,000 and, if it had been obtained, the Company would have been

18

able to survive. However, the sales representative left the Company, and secured the new contracts for his own account. After the amended settlement agreement, the Company learned that it had sold an application which did not perform properly and which had been falsely claimed to have been developed by an employee of the Company. In November 2018, the Company entered into a workout process for the payment of its debts. As a result, Honor Technology Solutions agreed to purchase the Company's assets and operate the business in exchange for establishing a $200,000 escrow for the payment of the Company's major creditors, including MegaForce. However, because most of the Company's major clients had already decided not to do business with the Company, accounts were not generated and the escrow was not established. All this indicates Beach tried to repay MegaForce, not defraud MegaForce.

### 2. Elements two through five are not satisfied.

As stated above, to prevail on a § 523(a)(2)(A) claim, the creditor must prove five elements. Here MegaForce has failed to prove the first, which is the foundation for the exception. Elements two through five all relate to the existence of the first—intent to deceive refers to a debtor's motivation when making the misrepresentation, false pretense, or actual fraud; justifiable reliance refers to reliance on that conduct; and the damage element refers to

19

the harm resulting from the conduct. Because MegaForce has not proven the first element, the analysis of these additional elements is superficial.

As suggested above, the Court finds no evidence that Beach intended to deceive MegaForce. Because the exception from discharge is for a debt for "money, property, services, or an extension, renewal, or refinancing of credit to the *extent obtained*" by one of the enumerated wrongful acts, the intent to deceive must exist at the time of the inception of debt, not just later when the debt is not paid. Without more, failure to pay a debt is not evidence of intent to deceive at the time the debt was incurred or credit extended.

The evidence does support a finding that MegaForce relied on whatever information the Company provided, but that reliance was not justifiable. Although the debt arose from an ordinary commercial transaction, MegaForce did nothing to protect itself. MegaForce requested information about the payment of 1 Global, but there is no evidence of other requests. MegaForce relied on the Company to prepare a UCC-1, even though a creditor who has been granted a security interest may unilaterally prepare and file a UCC-1.[20] There is no evidence that MegaForce made any inquiry as to Beach's personal finances. As to the Company's ability to pay, there is no evidence that

---

[20] See K.S.A. § 84-9-502 (stating that a financing statement is sufficient if it provides the name of the debtor, the name of the secured party, and indicates the collateral covered). The signature of the debtor is not required.

20

MegaForce conducted a UCC search to determine if 1 Global was in fact the holder of a perfected security interest in the Company's accounts.

Finally, the Court finds no evidence that MegaForce was harmed by its forbearance. Following the September 2017 settlement, its claim was reduced from about $640,000 to $260,000. MegaForce filed suit a mere 58 days after the amended settlement agreement. There is no evidence of harm caused by this short delay.

### B.    MegaForce's claim is not excepted from discharge under § 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for wilful and malicious injury by the debtor to another entity or to the property of another entity." "[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[21] Although the exception "generally relates to torts not to contracts,"[22] not even all tort claims are included. The exception does not apply to situations where the act is intentional, but the injury is unintended, such as a traffic accident stemming from an intentional act.[23] A knowing breach of contract also is not

---

[21] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

[22] 4 *Collier on Bankruptcy* ¶ 523.12.

[23] *Kawaauhau*, 523 U.S. at 62.

21

included.[24]

In the pretrial order, MegaForce contends the § 523(a)(6) exception

applies because:

> [Beach] . . . failed to provide [MegaForce] with a complete UCC-1 Financing Statement, failed to provide information regarding the 1 Global security interest, . . . failed to notify [MegaForce] that her indebtedness was satisfied, . . . changing the name of Damascus Edge to Mode3 without informing [MegaForce,] [and] by withholding material facts from [MegaForce].

These allegations fail as a matter of law; they allege nothing but a breach of

express and/or implied contractual duty. There is no evidence to support a

finding that Beach intended to injure MegaForce, willfully and maliciously as

required by § 523(a)(6) or otherwise.

MegaForce's claim against Beach is not excepted from discharge under

§ 523(a)(6).

## III.   Conclusion

For the foregoing reasons, MegaForce's complaint to except its claim

against Beach from discharge under § 523(a)(2)(A) and (a)(6) is denied. In

addition to failure to prove the specifics of the elements of the exceptions to

discharge, two overarching failures in MegaForce's case make this outcome

inevitable. First, this objection to discharge is filed in the personal

---

[24] *Id.*

Case 20-07009    Doc# 80    Filed 06/15/21    Page 22 of 23

bankruptcy of Beach, who personally guaranteed payment of the Company's debt to MegaForce. Although discharge of the Company's liability to MegaForce is not in issue, the evidence focused exclusively upon the Company and Beach's actions as the Company's representative. Second, boiled down to its essentials, the evidence supports nothing but breach of contract claims against the Company and Beach, as guarantor. Contract claims do not come within the exceptions to discharge.

**It is so ordered.**

**###**